**Ronald RINES**

v.

**UNITED STATES of America**

**No. CIV.A.04–3242.**
**Nos.CRIM.A. 00–334, CRIM.A.01–228.**

United States District Court,
E.D. Pennsylvania.

Jan. 14, 2005.

**570**

Ronald Rines, Philadelphia, PA, pro se.

Howard Perzan, Thomas R. Perricone, U.S. Attorney's Office, Philadelphia, PA, for Defendant.

### MEMORANDUM OPINION AND ORDER

RUFE, District Judge.

Before the Court is Petitioner Ronald Rines' Motion to Vacate, Set Aside or Correct His Sentence ("Motion to Vacate"), pursuant to 28 U.S.C. § 2255. On June 9, 2000 Defendant was charged in the Eastern District of Pennsylvania with five counts of armed robbery,[1] relating to five separate armed bank robberies he committed between January 4 and March 2, 2000. Pursuant to a plea agreement, he pled guilty to three of these robberies, stipulated that he committed the other two, and agreed that all five should be considered relevant conduct for sentencing. On May 1, 2001, Rines was charged in the Middle District of Pennsylvania with an additional armed bank robbery committed on June 10, 1999. After Rines pled guilty to this charge, and with the parties' consent, the

---

1. 18 U.S.C. § 2113(a) and (d).

Court consolidated these cases for sentencing.

The Court sentenced Rines to 188 months of imprisonment on each of the four counts of armed robbery, each term of imprisonment to run concurrently, and to be followed by a five-year term of supervised release. The Court also required Rines to pay $400.00 in special assessments and $31,434.00 in restitution. Although fines are permitted under the guidelines, none were imposed due to Rines' inability to pay. Rines appealed his sentences to the United States Court of Appeals for the Third Circuit. The Third Circuit dismissed the appeal for lack of jurisdiction on September 30, 2003, ruling that it did not have jurisdiction to review a claim for downward departure where the district court was aware of its authority to depart downward from the USSG but declined to do so under the facts and circumstances of the case.

On July 8, 2004, Rines filed the present Motion to Vacate, raising three issues: 1) misapplication of the United States Sentencing Guidelines ("USSG") when counting prior criminal history points; 2) mistakes in the Court's orders regarding monetary penalties and scheduled payment of those penalties; and 3) ineffective assistance of counsel at the sentencing hearing and on appeal.[2]

## I. Background

### A. Prior History of Criminal Behavior

Rines has an extensive prior history of criminal behavior, dating back almost fifty years.

Rines began using alcohol and drugs as an early adolescent and started using heroin at age fourteen. From November 1999 through his arrest in March 2000 for the instant offenses, he also used crack cocaine daily.

Rines was first arrested at age nine, for burglary. Rines was adjudicated delinquent and committed to residential placement. At age eighteen, he was convicted of breaking and entering and sentenced to three months imprisonment. From age twenty to the present arrest, a period of approximately thirty-six years, Rines was incarcerated in state or federal prison for all but twenty-nine months. In those twenty-nine months of freedom, he committed at least eighteen felonies, including larceny, forgery, burglary, and armed robbery, usually while on parole or supervised release.

Rines was first convicted of armed bank robbery in 1969, at age twenty-four. He entered the Liberty Federal Savings and Loan with the intent to rob the bank. An FBI agent who was in the bank at the time spoke briefly to Rines, and Rines pointed a firearm at the agent. The agent then attempted to disarm Rines, and in the struggle Rines dropped the firearm and ran from the bank. That same week, Rines robbed the Ambler Savings and Loan Bank, stealing $1813 from one of the bank tellers. He was sentenced to ten years imprisonment by a federal judge and paroled in February 1974.

In October, 1974, Rines was arrested after he robbed a liquor store, discharging a firearm in the course of the robbery. That same month, he was charged with the following additional crimes: 1) robbery (details unavailable); 2) bank robbery involving a death threat; 3) robbery involving paying a minor to withdraw cash from

---

2. Rines has also filed a Motion for an Evidentiary Hearing on the issues he presents in his Motion to Vacate. Because the Court can make its determination based upon the record and the supplementary materials Rines submitted in support of his Motion to Vacate, the Motion for an Evidentiary Hearing is denied.

a bank using a stolen bankbook; 4) armed robbery of the Public Finance Service Company; 5) armed robbery of the Board of Realtors, Upper Dublin Township, Pennsylvania; and 6) armed robbery of a donut shop. For this series of crimes (collectively "the 1975 convictions"), he was found guilty and sentenced to concurrent seven and a half to fifteen year terms in the Pennsylvania state correctional system. However, he escaped from prison on May 1, 1979 and was subsequently arrested, convicted, and incarcerated in other states on other charges, as described below. He returned to complete his Pennsylvania sentences in 1993 and was not granted parole for the 1975 convictions until 1999.

On May 11, 1979, shortly after escaping from detention in Pennsylvania, the defendant entered the Ambler Savings and Loan in Ambler, Pennsylvania. He presented a demand note with a death threat to a teller, who handed him $1125. He was not arrested for this crime until 1983, when he was charged and convicted in the Eastern District of Pennsylvania, and sentenced to fifteen years imprisonment.

In the meantime, on May 24, 1979, Rines was arrested for two bank robberies he committed in New Jersey. On May 13, 1979, he showed an employee at the First National Bank of New Jersey in Trenton a firearm and ordered a teller to give him money. He left the bank with $1900. On May 24, 1979, he robbed the Capitol Street George Savings and Loan in Trenton, again revealing a gun. He received $2050 from a teller and fled. For these two robberies ("the 1980 convictions"), a New Jersey state court sentenced him to ten years imprisonment, of which he served seven years. He was paroled to a federal detainer on June 30, 1987 to serve his federal sentence for his 1983 conviction.

Rines was granted parole to a Pennsylvania detainer on September 25, 1989.

Pending extradition to Pennsylvania, he was released on bond on October 11, 1989. Less than three weeks after his release on bond, Rines robbed a gas station at gunpoint. He was arrested that same day. In 1990, he was convicted and sentenced to eight years in an Indiana state prison for this robbery. After his release in late 1993, Rines was returned to Pennsylvania to complete his state prison sentences for the 1975 convictions. He was finally paroled for these convictions on March 16, 1999, and was still on parole at the time of the instant offenses.

## B. *The Instant Offenses*

On June 10, 1999, Rines entered Drovers Bank in York, Pennsylvania. He approached a teller, holding what appeared to be a semi-automatic handgun, and demanded money. After the teller put the money from her cash drawer in his bag, he pointed his gun at a second teller and asked for the twenty and hundred dollar bills from her drawer. She complied. Rines left with $6786. At the time of this robbery Rines was living in a half-way house where he had stayed since his March 1999 release from prison.

On January 4, 2000, armed with a silver handgun, Rines entered a Sovereign Bank in Oreland, Pennsylvania and demanded money from two tellers. Rines left with $3830, some of which was recovered after a dye-pack concealed in the stolen money exploded.

On January 11, 2000, Rines approached a teller at a Royal Bank in Villanova, Pennsylvania, holding a handgun, and demanded money. Rines left with $6952.

On January 26, 2000, Rines approached a teller inside Wilmington Trust Bank in Villanova, Pennsylvania, showed her a semi-automatic pistol and demanded that she give him all of her cash. The teller handed him $8911. He instructed the tell-

er to lie face down on the floor, and warned her that he would come back and hurt her if she got up. He then left the bank.

On February 16, 2000, Rines and another male entered the Wilmington Trust Bank in Villanova, Pennsylvania. Rines entered the area behind the teller counter and ordered the tellers onto the floor. He then took money from the tellers' cash drawers. The tellers believed the other male had a gun. Rines and his accomplice stole $7205 from the bank

On March 2, 2000, Rines entered the Mellon/PSFS Bank in Langhorne, Pennsylvania. After getting change from one teller, he approached another teller, opened his jacket to display a handgun, and demanded money. Rines left the bank with $1717 from the teller, but all but $14 was recovered by the bank after a dye-pack exploded.

## II. *Discussion*

### A. *The Court Properly Sentenced Rines Under the Sentencing Guidelines* [3]

Sentencing for armed bank robbery is governed by USSG § 2B3.1. For each individual robbery, the base offense level is twenty. For Rines, the base offense level was increased by two levels because the stolen property belonged to a financial institution [4] and by three levels because the defendant brandished a dangerous weap-

on.[5] Each offense was grouped with the other robberies, resulting in a combined offense level of thirty.[6] Rines had numerous prior felony convictions, including thirteen convictions for robbery. These prior convictions raised his offense level to thirty-four. Under the terms of his guilty plea agreement, Rines' offense level was reduced from thirty-four to thirty-one because he accepted responsibility and promptly notified the government of his intent to plead guilty.[7] Rines does not dispute this calculation. The Court found Rines' prior criminal history placed him in category VI. Under USSG § 5A, the sentencing guidelines range for a defendant at offense level thirty-one with prior criminal history category VI is 188–235 months of imprisonment.

The sentence of 188 months imposed by the Court was at the lowest end of the appropriate guideline range. The Court considered Rines' age (fifty-six years old), physical health (namely that he suffers from diabetes and rheumatoid arthritis), his past drug use, and his need for continued drug and mental health treatment. While recognizing the egregiousness of his crimes and his criminal history, the Court found sufficient reasons to sentence him in the lower range of the guidelines. As noted above, the Court found Rines eligible for downward adjustments based on his acceptance of responsibility and timely

---

**3.** Rines recognized that, at the time he filed this Motion, *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) was the governing Supreme Court ruling on the USSG, and does not argue under *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Rines reserved the right to raise a new argument when the Supreme Court issued its opinion in *United States v. Booker*. Rines Opposition to Government's Response at 4 [00–334, Doc. # 51; 01–228, Doc. # 20]. The Court has not and need not make any determination as to whether

*Blakely v. Washington* or *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, —— L.Ed.2d —— (2005) applies to the Motion before it.

**4.** § 2B3.1(b)(1).

**5.** § 2B1.3(b)(2)(E).

**6.** § 3D1.4.

**7.** USSG § 3E1.1(a) and (b).

notification of his intent to plead guilty. However, the Court denied the Motion by Ronald Rines for Departure from the Sentencing Guidelines,[8] in which he claimed extraordinary acceptance of responsibility, unduly harsh prison conditions suffered during pre-trial detention, and certain mitigating factors (including psychological problems and institutionalized behavior). The Court also rejected the argument set forth in Rines' two supplementary *pro se* Amended Sentencing Memoranda,[9] which asserted that the use of pre–1987 convictions to calculate his guidelines score was a violation of the constitutional prohibition on ex post facto laws. Rines does not reassert these issues in this Motion to Vacate.[10]

Rines now argues that the Court erred in finding that he belonged in criminal history category VI. For the reasons outlined below, the Court finds no error in its finding, nor does the Court find that criminal history category VI misrepresents or overstates the seriousness of Rines' prior conduct or his risk of recidivism.[11]

### 1. United States Sentencing Guidelines § 4A

The Presentence Report ("PSR") attributed fifteen criminal history points[12] to Rines under USSG § 4A1.1, placing Rines in criminal history category VI.[13] Without objection from the defense,[14] the Court adopted the point count presented in the PSR. Rines now argues that under USSG § 4A the Court should have attributed him with only three prior criminal history points,[15] placing him in criminal history category II.

First, Rines argues that the Court should not have attributed him with three points each from the 1980 and 1983 convictions for bank robbery, because these convictions occurred more than fifteen years before the crimes at issue. However, USSG § 4A1.2(e) instructs the Court to include any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense, *and also* any prior sentence, whenever imposed, that resulted in the

---

**8.** 00–334, Doc. # 25.

**9.** 00–334, Doc. # 29 and 30.

**10.** Rines raises the ex post facto clause issue indirectly in the present Motion by suggesting that his appellate counsel's failure to raise it on appeal is proof that counsel was ineffective.

**11.** *See* USSG § 4A1.3.

**12.** Rines was attributed with six points for the 1975 convictions for six separate robberies, which were treated as related crimes; three points for one of the two 1980 bank robbery convictions, three points for the 1983 conviction for bank robbery, and three points for the 1990 conviction for bank robbery. Part of his sentence for each of these convictions was served within fifteen years of the present series of crimes, as will be discussed in detail *infra*. These points were awarded in accordance with USSG § 4A1.1.

**13.** Individuals with thirteen or more criminal history points are in criminal history category VI. USSG § 5A.

**14.** Neither Rines' counsel nor Rines himself objected to the calculation of criminal history points. However, Rines argued that using criminal history points acquired prior to adoption of the USSG to enhance a subsequent sentence violates the ex post facto provision of the United States Constitution. Rines' counsel declined to argue this point in his motions or at the sentencing hearing. However, Rines raised this issue in a *pro se* pre-sentencing memorandum and argued the point at the sentencing hearing. This Court rejected Rines' ex post facto challenge [Doc. # 12]. *See also infra* Part II.C.2.

**15.** Rines does not contest the three points from his 1990 conviction for armed robbery of a gas station.

defendant being incarcerated during any part of such fifteen-year period. As recounted above, Rines received a ten-year sentence for the 1980 convictions, and was paroled on June 30, 1987. He received a fifteen-year sentence for the 1983 conviction, and was paroled on September 25, 1989. The crimes for which Rines was sentenced under this Court's October 25, 2002 sentencing order were committed between June 10, 1999 and May 2, 2000. Therefore, Rines served part of his sentence for the 1980 and 1983 convictions within the fifteen-year window set forth in USSG § 4A1.2 (e), and the Court properly attributed the six points to Rines for these prior crimes.

■ Rines also argues that the Court wrongly attributed him with six criminal history points for his 1975 convictions for a series of six Pennsylvania robberies in 1974. Rines received concurrent seven and a half to fifteen year sentences for these six robberies. Rines escaped from prison on May 1, 1979. He was returned to Pennsylvania to complete his sentence on December 28, 1993, and was finally paroled on March 16, 1999. Rines argues that he was not convicted of the crime of escape. This is true, but irrelevant.[16] The relevant consideration is not how long ago the sentence was imposed, but only whether Rines was incarcerated for the 1975 convictions during any part of the fifteen year period preceding the commencement of the instant offense.[17] March 16, 1999 is well within the fifteen-year period defined in USSG § 4A1.2(e). The Court finds that

it properly counted six criminal history points for these convictions.

### 2. *United States Sentencing Guidelines § 4B*

■ Under USSG § 4B, Rines would fall into criminal history category VI regardless of the number of criminal history points the Court counted under USSG § 4A. It is evident from the review of his criminal history that Rines had more than two prior felony convictions for crimes of violence, as defined by USSG § 4B1.2.[18] Therefore, Rines is a career offender, as defined by USSG § 4B, and a career offender's criminal history category is always category VI.[19] Accordingly, when the Court sentenced Rines for crimes of violence in October 2002, the Court properly considered Rines' criminal history to be in category VI, and the sentence imposed was consistent with the guidelines for category VI. Rines is not entitled to the relief requested.

### B. *The Court Made No Errors When Imposing Monetary Penalties*

As a part of Rines' sentences, the Court ordered him to pay a $400.00 assessment[20] and $31,434.00 in restitution according to a schedule of payments. The Court did not impose any fines because of Rines' inability to pay.[21]

Rines argues that: 1) the Court never intended to assess these monetary penalties against him, and 2) it presents a hardship for him to pay half of his institutional

---

**16.** The Court notes that it did not add any criminal history points for the crime of escape, since Rines was not convicted of escape.

**17.** USSG § 4A1.2(e).

**18.** USSG § 4B1.2 defines robbery as a crime of violence.

**19.** USSG § 4B1.1(b).

**20.** One hundred dollars for each of the four counts on which Rines was convicted, in accordance with the plea agreements between Rines and the government.

**21.** Under the USSG, the Court could have sentenced Rines to a fine range of $15,000 to $150,000, based on offense level 31, criminal history category VI.

salary (approximately $300.00 per year) to cover the restitution and assessment he owes. First, while the Court intended to and did excuse Rines from paying *fines* due to his inability to pay, the Court did not intend to excuse Rines from paying assessments and restitution.[22] At the sentencing hearing, the Court stated: "I don't believe you have the ability or will have the ability to pay a fine, but I am going to impose an order of restitution, and that restitution must be in the amounts that you stole." [23]

■ Second, the Court ordered a payment schedule which requires Rines to pay half of his wages while he is in prison, if he is approved for work.[24] After his release, Rines must pay at least $100 per month if he is working.[25] There is nothing unusually burdensome or unreasonable in this payment schedule, and Rines offers no evidence in support of his argument that it is a hardship for him to pay half of his monthly earnings towards his monetary penalties.

**22.** The Court waived the interest requirement for the restitution, due to Rines' inability to pay it.

**23.** Tr. page 60.

**24.** While the Judgment in a Criminal Case, Schedule of Payments erroneously represents the Court's intention and was entered in error, it is clear from the discussion in the Transcript of Sentencing, page 63, that the Court intended for Rines to pay half of his salary, up to a maximum of $100.00 per month, towards his monetary penalties while incarcerated.

The Court acknowledged that Rines might *not be able to work*, and stated: "Just so it is clear, there is no way I am expecting him to materialize money that doesn't exist. He has to be working in order to pay." (Tr. at 62–63). Although Rines has some health conditions, including rheumatoid arthritis and diabetes, there was no evidence of record indicating that he would *not* qualify for the work program while incarcerated. The sentencing

Rines does not claim that the monetary penalties were imposed in violation of the Constitution or laws of the United States, or that the Court was without jurisdiction to impose such penalties, or that the penalties were in excess of the maximum authorized by law, or are otherwise subject to collateral attack.[26] However, the Court has reviewed the monetary penalties imposed, and finds no violation of Constitutional or federal law. The Court ordered the $400 assessment pursuant to the plea agreements Rines signed, and full restitution to the banks he robbed pursuant to 18 U.S.C. § 3663. The Court finds no legal error in the imposition of monetary penalties.

## C. Effective Assistance of Counsel During Sentencing and Appeal.

Rines argues he received ineffective assistance of counsel in violation of the Sixth Amendment of the Constitution.[27] For the reasons set forth below, the Court disagrees.

Order requires him to make payments while incarcerated only if he is approved for work.

**25.** The Court recognizes that Plaintiff will be over seventy-years-old upon release and may be unable to work.

**26.** 28 U.S.C. § 2255.

**27.** In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth the familiar standard for ineffective assistance of counsel claims. Under Strickland, "[f]irst, the defendant must show that counsel's performance was deficient." This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." 466 U.S. at 687, 104 S.Ct. 2052.

### 1. *Effective Assistance of Counsel at Sentencing*

Rines believes that he should not have been attributed six criminal history points for his 1975 robbery convictions, presumably because, but for his escape from prison, his sentence of seven and a half to fifteen concurrent prison terms would have been completed well in advance of the fifteen year window for counting criminal history points. Because he did escape, and was not returned to the jurisdiction until 1993 to complete his sentence, he was imprisoned for these crimes within the fifteen year window. Without objection from the defense,[28] the PSR and the Court counted points from the 1975 robbery convictions when determining Rines' criminal history category.

Rines believes that since he was not convicted of the crime of escape, he should not have been attributed with criminal history points for the 1975 robbery convictions. Rines argues that his counsel at sentencing was ineffective for failing to confirm that he had not been convicted of escape, and for failing to object to the PSR on the grounds that it attributed him with six points for the 1975 robbery convictions.[29] Rines asserts that, had counsel successfully raised this objection, Rines' criminal history points would have placed him in criminal history category IV rather than VI.

The government's failure to convict Rines of escape is irrelevant to the computation of criminal history points under USSG § 4A, as noted above.[30] Furthermore, due to his subsequent criminal history, Rines would have been placed in prior criminal history VI as a career offender under USSG § 4B even if the Court had disregarded the points related to the 1975 convictions.[31] Therefore, his counsel's failure to object to the PSR's count of criminal history points did not prejudice Rines, and his counsel cannot be considered ineffective for failing to raise this issue at sentencing.[32]

### 2. *Effective Assistance of Counsel on Appeal*

Rines argues that his appellate counsel was ineffective because counsel failed to raise an ex post facto challenge to his sentence. In his *pro se* downward departure motion and at the sentencing hearing, Rines argued that the ex post facto clause of the Constitution prohibits enhancements of his sentence for crimes committed before the implementation of the USSG in 1987. The Court rejected Rines' position.[33] As a result, crimes which Rines committed prior to 1987 were included in the Court's assessment of Rines' prior criminal history category. Rines asked his appellate counsel to raise the ex post facto issue on appeal, and his appellate counsel declined.

Attached to Rines' Motion is a letter he received from his appellate counsel. It is clear from this letter that Rines' appellate counsel considered Rines' wish to raise the ex post facto issue on appeal and made a strategic decision not to raise it himself.[34]

---

**28.** *See infra* note 14.

**29.** The PSR did not list the crime of escape and did not count any points for the crime of escape. Nor did the Court count any criminal history points for the crime of escape.

**30.** *See infra* Part II.A.1.

**31.** *See infra* Part II.A.2.

**32.** *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)

**33.** *See* Memorandum dated November 22, 2002.

**34.** Counsel also noted that Rines had already (independently) sent a letter to the clerk of the appellate court, in which Rines raised this issue and cited cases in support of his position. Counsel suggested that the appellate court could consider this his supplemental brief.

**578**

He clearly explained the reasons for his decision in the letter. The Third Circuit Court of Appeals had previously held that the USSG's prior criminal history sentencing enhancements do not violate the Constitution's ex post facto prohibition, even when the prior convictions occurred before the institution of the USSG.[35] Therefore, counsel's strategic decision not to raise this settled issue on Rines' appeal does not fall below an objective standard of reasonableness.[36]

### III. Conclusion

The Court finds that it properly sentenced Rines under the United States Sentencing Guidelines. Rines' prior criminal history category was category VI. The Court made no errors in imposing monetary penalties, and the monetary penalties imposed do not violate the Constitution or laws of the United States. Further, Rines received effective assistance of counsel during both the sentencing and the appeal processes.

An appropriate Order follows.

### ORDER

**AND NOW,** this 20th day of January, 2005, having reviewed Rines' Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [00–334, Doc. # 48; 01–228, Doc. # 17], the government's response thereto [00–334, not docketed; 01–228, Doc. # 19], Rines' Opposition to the Government's Response [00–334, Doc. # 51; 01–228 Doc. # 20], and Rines' Motion for an Evidentiary Hearing [00–334, Doc. # 53; 01–228, Doc. # 28], and for the reasons set forth in the attached Memorandum Opinion, it is hereby **ORDERED:**

1. Rines' Motion for an Evidentiary Hearing is **DENIED.**

2. Rines' Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 is **DENIED.**

3. The Clerk of the Court shall mark this case **CLOSED** for statistical purposes.

4. There is no probable cause to issue a certificate of appealability.

It is so **ORDERED.**

---

**35.** *United States v. Bucaro,* 898 F.2d 368 (3d Cir.1990).

**36.** *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.